# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GARY M.,[1] | : | Case No. 3:22-cv-00080 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in March 2019. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I. **BACKGROUND**

Plaintiff asserts that he has been under a disability since February 28, 2019. At that time, he was fifty-nine years old. Accordingly, Plaintiff was considered a " person of advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). Prior to the date the ALJ issued the decision, Plaintiff turned age sixty and changed age categories to a person who is "closely approaching retirement age." *Id.* Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 7) is summarized in the ALJ's decision (*id.*, PageID 44-52), Plaintiff's Statement of Errors ("SE," ECF No. 10), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," ECF No. 11). Plaintiff did not file a Reply Memorandum. Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II. **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 28, 2019, the alleged onset date. |
| Step 2: | He has the severe impairments of aortic stenosis, aortic aneurysm, heart murmur of the aortic valve, arthritis of the knees and hips, and obesity. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, |

> 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "lifting/carrying up to 20 pounds occasionally and 10 pounds frequently; standing/walking for approximately 2 hours per 8 hour workday; sitting for approximately 6 hours per 8 hour workday, with normal breaks; no climbing of ladders, ropes and scaffolds; no crawling; occasional climbing of ramps and stairs; occasional balancing, stooping, crouching and kneeling; and avoid hazardous machinery and unprotected heights."
>
> Plaintiff is able to perform his past relevant work as a community services specialist, as it is generally performed and as Plaintiff actually performed the job.

(AR, ECF No. 7-2, PageID 46-52.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and is not entitled to benefits. (*Id.*, PageID 52.)

### B. The ALJ's Analysis of Symptom Severity

The ALJ explained the applicable legal standard for evaluating Plaintiff's symptoms when determining the RFC, as follows:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
>
> In considering [Plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce [Plaintiff's]pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities. For this purpose, whenever

> statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

(AR, ECF No. 7-2, PageID 48.)

The ALJ then summarized Plaintiff's symptoms and compared them to the objective medical evidence. (AR, ECF No. 7-2, PageID 48-50.) The ALJ found that Plaintiff's complaints of swelling and edema in the lower extremities were inconsistent with the objective medical evidence:

> Further, the claimant asserted that he has swelling/edema in his lower extremities. To the contrary, on January 10, 2019, the claimant did not have edema in his extremities on examination (Exhibit 11F/20). On May 6, 2019, the claimant denied having swelling in his legs (Exhibit 8F/2). The claimant did not have edema on July 25, 2019 and August 14, 2019 (Exhibit 11F/13 and 15F/19). Likewise, on September 4, 2019, physical examination did not reveal any edema in the claimant's extremities (Exhibit 14F/39). On December 17, 2019, the claimant did not have swelling on physical examination (Exhibit 20F/17). The claimant did not have any swelling on January 15, 2020 and April 30, 2020 (Exhibit 20F/8, 14).

(*Id.*, PageID 49.)

The ALJ also found that Plaintiff was noncompliant with treatment recommendations for arthritis and obesity, and that he had not sought treatment consistent with his complaints of disabling arthritis pain:

> [Plaintiff] has been noncompliant with his treatment regimen for his arthritis. By way of example, on July 3, 2019, [Plaintiff] weighed 400 pounds with a BMI of 57.39 and was advised that he needed to decrease his BMI to around 50 prior to proceeding with a left total hip arthroplasty (Exhibit 20F/31). On September 23, 2019, [Plaintiff] was advised that he needs to lose weight before he can get knee or back surgery (Exhibit 11F/5). Treatment notes dated April 30[,] 2020, state [Plaintiff] understands he has a significant amount of weight to lose prior to being eligible for a

6

> total joint replacement [of his hip] (Exhibit 20F/9). On May 20, 2020, the claimant's BMI [at 53.23] was still too high [to have surgery] (Exhibit 20F/2). [Plaintiff's] [p]oor compliance is not consistent with [Plaintiff's] allegations about the severity of his symptoms.
>
> Moreover, [Plaintiff] has not sought the type of treatment one would expect for an individual claiming to suffer from disabling arthritis pain. [Plaintiff] has not attended chiropractic care, sought pain management or undergone surgical intervention. [Plaintiff's] failure to seek this treatment is not consistent with his allegations about the severity of symptoms he experienced after the alleged onset date of disability.
>
> Lastly, [Plaintiff] is obese (Exhibits 2F, 5F, 6F, 8F, 11F, 14F, 17F and 20F). [Plaintiff] has been noncompliant with his treatment regimen for his obesity. On September 24, 2019, [Plaintiff] was referred to bariatric surgeon and dietician (Exhibit 11F/5). [Plaintiff] did not meet with the bariatric surgeon until November 22, 2019 (Exhibit 17F). [Plaintiff] was to return to see the bariatric surgeon once the insurance requirements, preoperative clearances and evaluations have been obtained (Exhibit 17F/16). However, [Plaintiff] never returned to see the bariatric surgeon. It also appears that [Plaintiff] did not meet with the dietician until January 8, 2020 (Exhibit 18F/16). This poor compliance is not consistent with [Plaintiff's] allegations about the severity of his symptoms.

(AR, ECF No. 7-2, PageID 49-50.) The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.*, PageID 48.)

### C. VE Testimony

The vocational expert (VE) testified that a hypothetical individual of Plaintiff's age, education, and work experience—and with the ALJ's RFC for a reduced range of light work—would be able to perform Plaintiff's past relevant work as a community

service specialist. (AR, ECF No. 7-2, PageID 70-71.) The VE explained that such an individual could perform the job only as it is customarily performed and not as Plaintiff actually performed the job.[2] (*Id.*) In response to an additional hypothetical question, the VE testified that an individual who would be off-task for twenty percent of the workday and absent from work at least two days per month would be unable to maintain full-time, competitive employment. (*Id.*, PageID 71).

## IV. THE ALJ REVERSIBLY ERRED WHEN EVALUATING PLAINTIFF'S SYMPTOM SEVERITY

Plaintiff contends that the ALJ erred because he "incorrectly created and relied on a [RFC] that produced relevant work while evaluating [Plaintiff] under prong five of the sequential process." (SE, ECF No. 10, PageID 1468.) Plaintiff asserts that the RFC lacks restrictions—specifically restrictions allowing for off-task behavior or absences—to account for Plaintiff's "impairments and resulting pain." (*Id.*) Plaintiff further argues that the ALJ erred "in failing to fully consider the testimony of the vocational expert." (*Id.*, PageID 1469.) Finding error in the ALJ's evaluation of Plaintiff's subjective symptoms and pain, the Court does not address Plaintiff's other alleged errors and, instead, instructs the ALJ to address all of them on remand.

---

[2] The ALJ concluded at Step Four: "In comparing [Plaintiff's] [RFC] with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform the job of community services specialist ***as it is actually and generally performed***. This is supported by the testimony of the vocational expert." (AR, ECF No. 7-2, PageID 51) (emphasis added).) The ALJ's conclusion contradicts the VE's testimony that such an individual could not perform the community services specialist job as the Plaintiff actually performed it. Because the Court finds error with the ALJ's evaluation of Plaintiff's symptom severity and remands on that basis, it does not address this issue further and instead instructs the ALJ to address this error on remand.

The ALJ's analysis of Plaintiff's symptom severity does not comply with the applicable rules and regulations, and the ALJ's findings are unsupported by substantial evidence. For both of these reasons, the Court reverses and remands the ALJ's decision.

The ALJ was required to comply with the applicable Social Security regulation when evaluating Plaintiff's symptoms. 20 C.F.R. § 404.1529. Also, because Plaintiff alleged symptoms of disabling severity, the ALJ was required to use a two-step process for evaluating those symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[3]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms

---

[3] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

9

differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

As part of this analysis, the ALJ is required to determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that the statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id.* at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

Further, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* at *9. However, an ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment

11

consistent with the degree of his or her complaints." *Id.* The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

As an initial matter, Defendant alleges that Plaintiff "does not challenge the ALJ's subjective symptom analysis, and thus, he has waived any such argument." (MIO, ECF No. 11, PageID 1481.) But although Plaintiff did not specifically reference the ALJ's "subjective symptom analysis," he did challenge the ALJ's RFC restrictions on the grounds that they do not adequately account for Plaintiff's "impairments and resulting pain." (SE, ECF No. 10, PageID 1468.) Plaintiff further asserted: "It is clear from that medical evidence that [Plaintiff] experiences pain from his conditions on a consistent and daily basis. However, [the ALJ] failed to account for [Plaintiff's] pain and how it would affect his ability to remain on task or present at work." (*Id*., PageID 1469.) The Court finds that this assignment of error does challenge the ALJ's symptom severity analysis.

Next, the Court finds that the ALJ's evaluation of Plaintiff's symptom severity is not supported by substantial evidence. Specifically, the ALJ misrepresented the record when addressing Plaintiff's complaints of swelling and edema in the lower extremities. The ALJ purportedly cited examinations that showed no edema or swelling. (AR, ECF No. 7-2, PageID 49.) But contrary to the ALJ's statement that a December 17, 2019

12

physical examination did not reveal any swelling, the records from that orthopedic examination show that Plaintiff complained of swelling and that the examination showed mild swelling over the bilateral hips and effusion of the bilateral knees. (*Id.*, ECF No. 7-9, PageID 1331-32.) The ALJ ignored the fact that Plaintiff's orthopedist documented swelling of the lower extremities during nearly every examination. (*Id.*, ECF No. 7-7, PageID 766, 7-9, PageID 1323, 1326, 1329, 1332, 1335, 1338, 1340, 1343, 1432.) And the ALJ ignored numerous examinations that did show edema. (*E.g., id.*, ECF No. 7-7, PageID 700, 722; ECF No. 7-8, PageID 1104, 1130, 1269; ECF No. 7-9, PageID 1269.)

The ALJ's failure to acknowledge significant evidence that supports Plaintiff's subjective complaints of lower extremity edema, and his mischaracterization of some of the evidence that he did cite, signifies an impermissibly selective review of the record. *E.g.*, *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 435 (6th Cir. 2013) (reversing where "[i]nstead of performing a proper analysis … the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain"). This error requires reversal.

The ALJ also erred when analyzing Plaintiff's treatment history. The ALJ found that Plaintiff was noncompliant with treatment recommendations for arthritis and obesity because he did not lose weight or timely follow up with a bariatric surgeon and dietician. (AR, ECF No. 7-2, PageID 49-50.) The ALJ also found that Plaintiff's treatment was not consistent with his alleged symptoms because he had "not attended chiropractic care, sought pain management, or undergone surgical intervention." (*Id.*) The ALJ concluded

13

that Plaintiff's noncompliance and failure to seek appropriate treatment were inconsistent with Plaintiff's allegations about the severity of his symptoms.

The ALJ's approach does not comply with the Social Security Administration's requirement that an ALJ must consider *why* a claimant's treatment history is inconsistent with his complaints when evaluating symptom severity:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . ***We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). Notably, SSR 16-3p requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). An individual's inability to afford treatment and adverse medication side effects are two possible reasons an ALJ should consider when evaluating a lack of treatment. SSR 16-3p at *10.

The ALJ failed to comply with SSR 16-3p because he did not consider possible reasons that Plaintiff failed to comply with or seek treatment consistent with the degree of

his complaints. The ALJ also did not develop the record regarding possible reasons for Plaintiff's noncompliance as required by SSR 16-3p. During the hearing, the ALJ asked Plaintiff to confirm a list of his impairments but did not ask any additional questions about those impairments. (AR, ECF No. 7-2, PageID 68-69.) For example, the ALJ did not ask Plaintiff any questions about his treatment history, why he was noncompliant with treatment recommendations or why he did not seek treatment consistent with the degree of the complaints alleged. (*Id.*) The ALJ therefore did not develop the record during the hearing to determine why Plaintiff had made certain choices about treatment. The ALJ's failure to comply with SSR 16-3p is an error of law that warrants reversal.

The ALJ's analysis of Plaintiff's treatment history also requires reversal because it is not supported by substantial evidence. The ALJ misconstrued the record regarding Plaintiff's alleged noncompliance. As noted above, the ALJ found that Plaintiff's high BMI provided evidence of noncompliance, because his weight prevented him from undergoing surgery for his hip and knee conditions. (AR, ECF No. 7-2, PageID 49.) But the record shows that Plaintiff made efforts to—and did—lose weight. A few weeks prior to the alleged onset date in January 2019, Plaintiff told his cardiologist that he was trying to lose weight and had lost over fifteen pounds since November 2018. (*Id.*, ECF No. 7-7, PageID 666.) Plaintiff met with a dietician for nutritional counseling in January 2019. (*Id.*, PageID 631.) Plaintiff's cardiologist noted in September 2019 that he continued to "struggle with weight loss" and counseled him on dietary changes. (*Id.*, ECF No. 7-7, PageID 1118.) He referred Plaintiff to a bariatric surgeon and dietician, and Plaintiff met with the surgeon in November 2019 (*Id.*, ECF No. 7-8, PageID 811; ECF No. 7-9,

15

PageID 1266.) Contrary to the ALJ's conclusion that Plaintiff was noncompliant, Plaintiff attempted to comply with the bariatric surgeon's recommendations. He told his primary care provider in December 2019 that he was "readying himself for bariatric surgery" and had lost thirty pounds. (*Id.*, ECF No. 7-9, PageID 1286.) Plaintiff subsequently told his primary care provider in January 2020 that he had follow-up appointments with the bariatric surgeon and dietician. (*Id.*, ECF No. 7-9, PageID 1293.)

      The ALJ also misconstrued the record when characterizing Plaintiff's treatment as inconsistent with his complaints. The ALJ criticized Plaintiff for failing to participate in chiropractic care or pain management, but the ALJ did not cite evidence that Plaintiff's providers ever recommended such treatment. (AR, ECF No. 7-2, PageID 49-50.) Moreover, the ALJ ignored the fact that Plaintiff participated in physical therapy and completed seventeen sessions. His therapist subsequently discharged Plaintiff due to his "plateau in progress," not because of any noncompliance (*Id.*, ECF No. 7-7, PageID 800-02.) Plaintiff also sought regular treatment for his pain complaints from his orthopedist, who prescribed pain medication and administered several knee and hip injections. (*See, e.g.,* AR, ECF No. 7-7, PageID 633, 773; ECF No. 7-9, PageID 1329, 1326, 1336, 1337, 1340, 1344, 1432, 1435.) The ALJ did not acknowledge this treatment when faulting Plaintiff for allegedly failing to seek chiropractic care or pain management. (*Id.*, ECF No. 7-2, PageID 49-50.) The ALJ also criticized Plaintiff for failing to undergo surgery, but ignored Plaintiff's efforts to lose weight so he could safely undergo such a procedure. (*Id.*, ECF No. 7-7, PageID 666; ECF No. 7-9, PageID 1286.)

16

The ALJ also erred when analyzing Plaintiff's daily activities. SSR 16-3p requires an ALJ to consider a claimant's daily activities when evaluating the severity of his symptoms. SSR 16-3p at *7. The ALJ's analysis of such activities must "be consistent with and supported by the evidence." *Id*. at *10. Similarly, the Sixth Circuit recognizes that an ALJ "may consider a claimant's household and social activities in evaluating complaints of daily pain." *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, the ALJ "may not take part of [Plaintiff's] testimony and disregard the rest." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003).

Here, the ALJ found that Plaintiff's daily activities are "inconsistent with his complaints of disabling symptoms and limitations." (AR, ECF No. 7-2, PageID 50.) The ALJ cited Plaintiff's statements that he "goes grocery shopping, performs self-care, drives, and goes to Wal-Mart (Exhibit 4E/2, 8 and 6F/2)" and found that "[t]he performance of such activities on a regular and continuing basis indicates that the claimant's level of pain does not seriously interfere with his ability to perform work involving a reduced range of <u>light</u> exertion described above." (*Id.*) This finding relies upon a mischaracterization of Plaintiff's statements. Contrary to the ALJ's conclusion that Plaintiff's daily activities are inconsistent with his allegations, the record is replete with evidence that Plaintiff experiences significant difficulties with these activities.

For example, although Plaintiff described grocery shopping in a June 2019 Disability Report, he said that shopping "takes about [three] times longer now than it used to." (AR, ECF No. 7-6, PageID 264.) With regard to his ability to perform self-care, Plaintiff said that bathing took longer and that he "needed to take long baths to soothe

17

[his] pain in the mornings." (*Id.*, PageID 270.) When discussing his driving abilities, Plaintiff said he was unable to drive for longer than an hour. (*Id.*, PageID 270.) And although Plaintiff told his physical therapist that he went to Wal-Mart, he also said that he could walk around for no more than thirty minutes, and needed to use a cart for support. (*Id.*, ECF No. 7-7, PageID 718.) The ALJ also ignored Plaintiff's difficulties with daily activities. For example, Plaintiff stated that many daily tasks are more difficult now and he has trouble sleeping at night. (*Id.*, PageID 281.) He can no longer play ball or go hunting with his son or grandson. (*Id.*, PageID 718.) He experiences pain after sitting for longer than fifteen minutes and finds it difficult to walk just fifty feet to his mailbox. (*Id.*, PageID 264.) Plaintiff also told his physical therapist that he has difficulty using stairs and can stand no longer than five minutes at a time. (*Id.*, PageID 718.)

The ALJ ignored these statements when he analyzed Plaintiff's symptom severity. The ALJ's finding that Plaintiff's daily activities are "inconsistent with his complaints of disabling symptoms and limitations" is therefore not "consistent with and supported by the evidence" as required by SSR 16-3p. Nor is it supported by substantial evidence. Instead, the ALJ's evaluation of Plaintiff's symptom severity signifies another example of the ALJ's impermissibly selective review of the record. *Minor,* 513 Fed. App'x at 435.

In sum, the ALJ erred by failing to comply with SSR 16-3p when evaluating Plaintiff's symptom severity, and by making factual findings that are not supported by substantial evidence. The ALJ's errors can only be excused as harmless if they do not prejudice the claimant on the merits or deprive him of substantial rights. *Rabbers*, 582

F.3d at 654. The Court finds that the ALJ's errors were not harmless because they prejudiced Plaintiff on the merits. Therefore, reversal is required.

## VI. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the Plaintiff's subjective complaints and treatment history, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (ECF No. 10) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.


                                                *s/ Caroline H. Gentry*
                                                Caroline H. Gentry
                                                United States Magistrate Judge